## WHITTINGTON VS. SIMMONS ET AL.

1. VENDOR AND VENDEE: *Title Bond, effect of.*
   When the vendor of land executes to the purchaser a bond for title upon payment of the purchase money, an equitable title to the land vests in the vendee, while the vendor retains the legal title as security for the purchase money, and upon his death the legal title descends to his heirs at law.

2. ————: *Judgment lien; Remedy of vendor, etc.*
   Upon the assignment by the vendee, of the bond for title, the equitable estate passes to the assignee, and a judgment at law against the vendee for the purchase money constitutes no lien on the land; the only remedy by which the lien for purchase money can be enforced is by bill in equity.

3. ————:
   Where, after an assignment of the title bond, the land is sold under a judgment for the purchase money against the vendee, an allegation that the assignee of the bond agreed, after the execution sale, for a valuable consideration, to deliver possession of the land to the purchaser, does not strengthen his title; the execution sale being void it was necessary to allege a purchase from the holder of the equitable title.

4. ————: *Bankruptcy, fraud, etc.*
   The question as to whether the sale of an equitable title to land by one about to become a bankrupt was a fraud upon his creditors, must be raised in the bankruptcy proceeding, and cannot be collaterally raised in a proceeding between a third party and the purchaser, concerning the title.

APPEAL from *Ashley* Circuit Court in Chancery.

Hon. THEODORIC F. SORRELLS, Circuit Judge.

*McCain*, for appellant.
*Compton & Parsons*, contra.

ENGLISH, CH. J.:

The bill in this case was filed in the Circuit Court of Ashley County, by Thomas M. Whittington against John G. Simmons and the heirs at law of John Smith, deceased.

The purposes of the bill were to obtain a decree against the heirs of Smith for the legal title to an undivided half of certain lands known as the Quindley Place, to cancel a sheriff's deed which Simmons had obtained for the lands, and to enjoin him from prosecuting certain proceedings at law, etc.

The heirs of Smith did not answer. The cause was heard upon the bill and exhibits, the answer of Simmons (which contained a demurrer) and exhibits, and depositions. The bill was dismissed for want of equity, and the complainant appealed.

There is no dispute about some of the leading facts of the case, the parties agreeing in their pleadings, etc., as to them. They disagree about other facts, and out of this disagreement grows the only trouble in ascertaining and deciding the legal and equitable rights of the litigants, so far as they can be settled on this appeal.

The bill alleges and the answer admits that on the 28th day of December, 1861, John Smith, then the owner in fee simple, and in possession of the lands in controversy (several tracts containing about 426 acres, situate in Ashley County), sold them to John Quindley for $15,000, of which $9460 were paid at the time, and for the remaining $5540 Quindley made to Smith a note of that date, payable 1st of March, 1864, with 6 per cent. interest, and Smith executed to him a bond covenanting to make him a good and sufficient deed to the lands on payment of the note, and delivered to him possession of the lands.

The leading effect of this transaction is that Smith, by means of the bond for title, conveyed to Quindley an equitable title to the lands, and retained the legal title as a security for the payment of the balance of the purchase money. *Moore & Cail, adm'r,* v. *Anders,* 14 Ark., 628; *Harris* v. *King,* 16 Ark., 122.

It is also averred in the bill, and admitted by the answer, that on the 4th day of January, 1866, Quindley sold the lands to L. H. Belser, and assigned to him by written endorsement, Smith's bond for title, and put him in possession of the lands.

By this sale and assignment of the bond for title, Quindley transferred his equitable estate in the lands to Belser. *Holman* v. *Patterson heirs,* 29 Ark., 364.

On the 8th of December, 1863, John Smith died intestate, in Drew County, and on the 30th of December, 1864, letters of administration upon his estate were granted, by the Probate Court of said county, to his widow, Sarah A. Smith, and appellee, John G. Simmons, who married one of his daughters.

On the 2d of April, 1867, Sarah A. Smith, as administratrix, and John G. Simmons, as administrator, of John Smith, deceased, recovered a judgment in the Circuit Court of Drew County, against John Quindley, upon the note given by him to their intestate, for balance of purchase money of the lands, for $6,757.40, being the principal and interest on the note.

On the 16th of November, 1867, an execution was issued upon the judgment against Quindley to the sheriff of Ashley County, which was levied on the lands in controversy (except one tract) and they were sold by the sheriff on the 24th day of February, 1868, and purchased by Simmons for $500. It is alleged in the bill, and not denied in the answer, that the sheriff made him a deed for the lands, and the bill professes to exhibit a certified copy of the deed, but we do not find it in the transcript.

Whittington vs. Simmons et al.

The bill alleges that he purchased the land in fraud of Smith's heirs, but this he denies, and avers that he purchased for their benefit. It seems that in his third and final settlement as administrator of Smith, he credited himself with amount paid the sheriff upon his bid for the lands, etc.

It is manifest that Simmons acquired no title to the land by this purchase. On the death of Smith, the legal title which he held in trust for his vendee, Quindley, descended to his heirs at law. The judgment was no lien upon the lands, and before the execution was issued, Quindley, the only defendant in the execution, had sold and transferred his equitable estate in the lands to Belser.

After Quindley had parted with his interest in the lands to Belser, the legal representatives of Smith could enforce the vendor's lien for purchase money, and sell the lands so as to convey title as against Belser, or his assigns, by bill in chancery only.·

It further appears from the pleadings and exhibits, that at the January Term, 1868, Sarah A. Smith applied, by petition, to the Probate Court of Drew County, to have dower assigned to her in the notes, accounts, bills, bonds, books and evidences of debt of the estate of John Smith, her deceased husband, and the court appointed three commissioners to assign to her such dower. On the 21st of April, 1868, the commissioners reported that they assigned the amount of $5535.19 in a note against John Quindley for $5540, dated December 28th, 1861, due on the 1st of March, 1864, at 6 per cent. interest from date, belonging to said estate, as the amount of dower due Sarah A. Smith in said estate. The court approved and confirmed the report, and adjudged that the widow have absolute control of said dower.

Simmons, as one of the administrators of the estate, filed exceptions to the report, before its confirmation, but the exceptions were overruled, and he prosecuted no appeal.

The grounds of exceptions were, that he, as a co-administrator and the heirs had no notice of the filing of the petition, and that all the dower in the personal property and choses in action which the widow was entitled, by law, to receive out of said estate, had already been assigned to her.

There is no showing in the transcript that such dower had been previously assigned the widow; and Simmons, whose duty it was as co-administrator, to assign her dower in the personal property, certainly had notice of her application for dower, for he appeared and contested it.

He admits that he attended to all of the business of the estate, at her request, and at the same term of the Probate Court he filed his account for settlement, and resigned his administration.

It is remarkable that the commissioners assigned $5535.19 of the Quindley note, nearly equal to the original principal of the note, to the widow as her dower share of the choses in action of the estate, when Belser had previously made large payments to Simmons, as administrator, upon the debt.

It further appears that on the 2d of April, 1869, Mrs. Smith took out an alias execution upon the judgment against Quindley, directed to the sheriff of Ashley County, who levied upon the lands in controversy, as the property of Quindley, offered them for sale on the 28th of March, 1869, and Mrs. Smith purchased them for $25, and on the 13th of May following, the sheriff executed to her a deed therefor.

Quindley having no estate in the lands at the time this execution was levied, Mrs. Smith acquired no title by the sheriff's sale and deed.

The allegations of the bill by which appellant, Whittington, makes out his claim of an equitable title to an undivided half of the lands, in addition to the facts shown above, are in substance as follows:

That on the 1st day of June, 1868, Belser, for valuable con-sideration, sold said lands to appellant and I. L. Brooks, to have and to hold as co-tenants, and, by an instrument in writing, trans-ferred said title bond (the bond executed by John Smith to Quindley and by him assigned to ·Belser), and all his interest therein, to appellant and Brooks; and they took possession of the lands, and held· the same· in possession, by their tenants, until the 25th day of April, 1872, when Brooks sold and con-veyed his half interest in the lands to appellee Simmons.

That said instrument of writing signed by Belser had been lost or mislaid and could not be found.

That the balance of purchase money due from Quindley to Smith, with all interest thereon, had been fully paid off and satisfied.

That the administration of the estate of Smith had been finally settled and closed by Sarah A. Smith in 1873.

That on the 14th of August, 1867, Belser then being the real owner and in possession of the lands, paid to appellee Simmons, as one of the administrators of the estate of Smith, the sum of $2346.07 in part satisfaction of the judgment against Quindley, recovered as above shown on the purchase money note, (Sim-mons admits this and other payments by Belser). That after said note had been assigned to Mrs. Smith as dower, and after she had purchased the lands at execution sale, as above shown, she, in the year 1872, executed to appellant and Brooks a deed for said lands.

That in June, 1869, appellant and Brooks paid to Mrs. Smith in full the amount due upon the judgment of Quindley, and she being the administratrix of said estate, and the owner of said judgment in her own right, acknowledged full satisfaction thereof.

That the legal title to the lands descended to the heirs of Smith, on his death, and was still in them.

That the judgment against Quindley having been fully satisfied by appellant and Brooks, and the administration of the estate of Smith closed, appellant was entitled to a deed from the heirs for an undivided half of the lands. Brooks having, as before shown, conveyed to appellee Simmons his undivided half of the lands, who thereby became the co-tenant of appellant.

The counsel for appellant does not rely for title on the conveyance made by the sheriff to Mrs. Smith, and her conveyance to him and Brooks; on the contrary, he concedes that she acquired no title by her purchase at the sheriff's sale, and insists that Simmons obtained none by his purchase at the previous sale by the sheriff, and in this we think he is right as above indicated.

Appellant's claim to an equitable title to an undivided half of the lands rests upon the alleged purchase by him and Brooks of the equitable estate of Belser in the lands; and he asks a decree against the heirs at law of Smith for the legal title to an undivided half of the lands, on the ground that they have no claim for unpaid purchase money, Quindley's note to their father having been satisfied, as shown in the bill.

As against the heirs of Smith, who it seems were of age when the bill was brought, appellant was entitled to a decree for the want of an answer.

It appears that after the alleged sale of the lands by Belser to appellant and Brooks, he was adjuged a bankrupt on his own petition, obtained a discharge, and afterwards died. He did not put the lands in his schedule.

Simmons denies, in his answer, the sale of the lands by Belser to appellant and Brooks.

The only depositions read upon the hearing were those of Brooks and Simmons.

Brooks was a disinterested witness, having conveyed his interest in the lands to Simmons. He proves the sale by Belser of his interest in the lands to him and appellant, substantially as alleged in the bill. He states that they paid Belser about $500 in legal services, and the advancement of fees, etc., and took his written assignment of Smith's bond for title, which had been lost or mislaid. Belser was to have until an agreed time to redeem the lands, but failed to do so. He delivered to them the bond for title.

In these statements Brooks is not contradicted by the deposition of Simmons.

Brooks also proves that after the Quindley note had been assigned to Mrs. Smith for dower, he and appellant purchased it of her, and took her written assignment of it, and the judgment recovered upon it in the Circuit Court of Drew County, which he appends to his deposition, and which bears date January 15th, 1870.

Simmons states in his answer: "That some time in January, 1868, Belser agreed to give defendant possession of said Quindley Place for a valuable consideration, and that afterwards, in the latter part of February, 1868, he did deliver possession of said place to this defendant, and also agreed to deliver up the title bond of said Smith to Quindley, and that such possession was delivered to this defendant after his purchase of said lands at the sale by the sheriff of Ashley County. That at the time this agreement was made with said Belser, he did not have said bond for title with him, but proposed to defendant to go with him to his house and he would deliver him up the bond. This defendant believing that the whole matter was settled, and that said Belser would not, or could not make any improper use of said bond, did not think it worth while to go to his house for it.

All this occurred before the pretended bargain and sale of said lands by Belser to said plaintiff and Brooks."

Conceding that Simmons proved in his deposition all that is so as above alleged, he fails to make out any valid purchase by him of Belser's equitable title to the lands. He alleges, in substance, that in January, 1868, Belser agreed to give him possession of the lands, for a valuable consideration, and afterwards in the latter part of February, 1868, and after he had purchased the lands at sheriff's sale, such possession was delivered to him.

He does not aver that he purchased the lands of Belser for a valuable consideration, and that possession was delivered to him under such purchase. *McNeill* v. *Jones*, 21 Ark., 277.

If appellant and Brooks did not acquire Belser's title, Simmons got none by the conveyance of Brooks to him, and his purchase at the sheriff's sale, on which he relies, being worthless, he has no title.

True, he exhibits with his answer a paper bearing date —— day of ——, 1869, purporting to be an agreement between him and the heirs of Smith to compromise some matters in litigation between them, by which they agreed to make to him a quit claim deed to all their right, title and interest in and to the Quindley lands, in consideration of his releasing certain claims against the estate of Smith, etc., but the execution of the instrument is acknowledged before no officer, and some of the heirs, who seem to have signed the paper, were married women, and it was signed for others, who were at the time infants, by a guardian *ad litem*.

Whether Simmons can enforce this agreement as to the undivided half of the lands not claimed by appellant, whether, regardless of this agreement, he would not, as vendee of Brooks, be entitled to a decree against the heirs of Smith for the legal title to an undivided half of the lands, we are not called upon

to decide on this appeal, as he did not make his answer a cross bill, or in any mode ask relief.

The counsel for Simmons submits that the sale by Belser of his interest in the lands to appellant and Brooks, made not long before he went into bankruptcy, and perhaps in consideration of legal services and fees advanced in the bankrupt case, was a fraud on the creditors of Belser.

It is sufficient to say of this that Simmons does not claim to have been a creditor of Belser, and if he was, he should have made this plea of fraud in the Bankrupt Court while the proceedings in bankruptcy were pending.

Upon the facts appearing in the record before us, the heirs of Smith hold the naked legal title to an undivided half of the lands in controversy in trust for appellant, and the court below, instead of dismissing the bill for want of equity, should have rendered a decree in accordance with the prayer of the bill.

The decree must be reversed, and the cause remanded with instructions to the court below to render a decree in favor of appellant for an undivided half of the lands as against Simmons and the heirs at law of Smith, and to make such further orders in the cause as may be in accordance with equitable principles and practice, and not inconsistent with this opinion.

As the heirs of Smith did not contest appellant's claim to relief, the costs of this appeal will be taxed against appellee / Simmons.