WARREN *v*. HENSON.

Opinion delivered May 17, 1926.

1. VENDOR AND PURCHASER—RIGHTS OF SURVIVING WIDOW.—Where a vendee of land, holding a bond for title, paid all of the purchase price except $107, and after his death his widow paid the balance and took deed to herself, her payment was in performance of the vendee's contract, and she acquired, in addition to her marital rights, only the right which the vendor had, namely, to enforce payment of such balance from the vendee's estate; and one who purchased from her with knowledge of the facts acquired no more title than she had.

2. HOMESTEAD—LIABILITY OF MINOR HEIRS FOR IMPROVEMENTS.— Minors are not liable for permanent and valuable improvements placed by an occupant on their homestead, since they can not be improved out of their homestead; but, in the absence of contract, the occupant should be allowed a reasonable compensation for necessary repairs, and charged with such rents for the premises as they would have yielded without the improvements.

Appeal from Clay Chancery Court, Western District; *J. M. Futrell,* Chancellor; affirmed.

*C. T. Bloodworth,* for appellant.

*Oliver & Oliver,* for appellee.

SMITH, J.   Appellee brought this suit against appellant to recover a forty-acre tract of land, being in the Western District of Clay County, which he alleged his father, J. E. Henson, contracted to buy from one W. C. Hastey, and from whom he received a bond for title, under which the said J. E. Henson entered into the possession of the land and occupied it until his death in 1907.

After the death of J. E. Henson his widow married Joe Wallace.   At the time of J. E. Henson's death there was a balance of $107 principal and $1.78 interest due on the land.   This amount was paid to Hastey by Mrs. Wallace, and Hastey executed to her a deed, which was dated December 14, 1908, and on October 29, 1909, Mrs. Henson deeded the land to appellant T. S. Warren, who has held possession of the land since that time.   Soon after he attained his majority, appellee brought suit to recover the possession of the land, and prayed that appellant

Warren be declared a trustee for appellee's benefit, and that appellee have an accounting of the rents and profits derived from the use and occupancy of the land by appellant.

The court found the fact to be that the land in controversy was the homestead of J. E. Henson, and that appellant Warren holds the legal title thereto as trustee for the use and benefit of appellee, who had just reached the age of twenty-one before instituting the suit, and it was decreed that the title be divested out of appellant and be vested in appellee.

The decree recited that the parties had stipulated that the stating of the account should be reserved until the title had been adjudicated, and that, as the adjudication of the title had rendered an accounting necessary, a master was appointed to state the account, and directions for so doing were given.

It appears that the original decree in the cause was rendered at the October term, 1924, but at the next term of the court, which was in March, 1925, the first decree was vacated in so far as it related to the instructions given the master in stating the account.

The second decree—the one from which this appeal is prosecuted—contains the following recital: "And it further appearing to the court that what purports to be a decree herein was in vacation entered of record on page 501 of chancery record 'E' of the Western District of Clay County, and that the said purported decree is not the decree rendered in this cause by this court, this decree as above set out, being in matter and form the decree rendered by this court in this cause, is prepared and ordered entered of record now for then."

The point of difference between the two decrees is in the directions given the master in regard to the allowance to appellant for improvements made.

Appellant insists that the testimony does not support the findings of fact on which appellant was decreed to be a trustee, and that the court was without authority to set aside the first decree.

The testimony, very briefly summarized, is as follows: Joe Wallace testified that he married Mrs. Henson December 23, 1908, at which time she was living on the land, and that he and his wife resided on the land after their marriage until 1909, when the land was sold by his wife to appellant. He testified that, when the contract to sell the land to appellant was made, he and his wife went to Paragould, where Hastey resided, and his wife tendered to Hastey the balance of purchase money and requested Hastey to make a deed to Warren, but Hastey declined to do so, for the reason that he had contracted to convey it to J. E. Henson, but that Hastey did execute a deed to Henson's widow when she paid the · balance of the purchase money. The witness further testified that the deed from his wife to appellant was prepared by and acknowledged before Henry Brown, a justice of the peace, who, at the time he took the acknowledgment, asked appellant if he were not afraid that Henson's heirs would some time cause him trouble, and appellant answered that he did not expect to keep the land that long. This witness also testified that his wife did not claim to have acquired the title for herself, and that she only claimed a dower interest in the land, and that, before the deed from Hastey was received, appellant attempted to obtain a loan on the land, but, when the abstract was received, the loan was declined, because it appeared that appellee's mother was not able to make a good title, yet the appellant bought the land from her later with knowledge of this fact.

Hastey identified a number of letters which he had written to J. E. Henson in regard to the sale of this land and the subsequent payments made on it. These letters were written in 1904 and 1905, and the originals of several of them, which are more or less illegible, are incorporated in the transcript. Those which were legible were copied. These letters are all addressed to J. E. Henson, and show that the payments which were acknowledged were made by Henson, and the letters all refer to the land as land bought by Henson.

There is nothing in any of the letters to indicate that Mrs. Henson was a party to the transaction. Hastey testified that he had no independent recollection of the transaction except as disclosed by the letters, which he admitted were written by him, and he had no explanation to make of the fact that he had conveyed to Mrs. Henson land which he had contracted to convey to her husband, except the fact that she paid the balance of purchase money due at the time he executed and delivered the deed.

Mrs. Henson's mother—appellee's grandmother—testified that she saw Henson with a paper which she knew at the time related to the land. This writing was evidently the bond for title, which was lost without being placed of record. This writing was never read by or to the witness, but Henson moved on the land shortly after she saw him with the paper, and improved the land, and lived there until his death.

In the answer filed by appellant he alleged the fact to be that he was an innocent purchaser of the land, and that he had no knowledge of the fact that, in paying the balance of purchase money due Hastey, Mrs. Wallace was merely completing the payments due under the contract to convey the land to J. E. Henson, but appellant offered no testimony tending to explain or to contradict the testimony offered on behalf of appellee tending to show that appellant was in fact familiar with the state of the title.

Appellant offered in evidence a quitclaim deed dated December 23, 1914, from H. H. Williams, under which appellant also claims title.

We think this testimony warranted the finding made by the court below that Hastey had contracted to sell the land to J. E. Henson, who, at the time of his death, had paid all the purchase money except $107. and some interest, and was entitled to a deed upon the payment of the balance, and that the payment of this balance by Henson's widow was in performance of that contract, and that appellant bought with knowledge of these facts.

Appellant insists that the testimony of Wallace is unworthy of belief because of certain alleged contradictions in his testimony as to the date of the deed from Hastey to Mrs. Wallace and the date of her deed to appellant; but the chancellor did not so regard this testimony; nor do we. The fact is that the two deeds were filed for record on the same day—October 30, 1909. The testimony of this witness is to the effect that appellant assisted Mrs. Wallace in performing the terms of the bond for title, and he did this with knowledge of the contract between Hastey and J. E. Henson, and he did not take the stand and deny the testimony given by Wallace imputing this knowledge to him.

We think appellant's possession is referable to the deed from Mrs. Wallace, and that appellant acquired no title under the quitclaim deed from Williams. Williams, the grantor in that deed, appears to have obtained a clerk's tax-deed, dated August 31, 1891, but the land again forfeited to the State in 1893, and was later conveyed by a redemption deed from the State to the Arkansas Western Railway in 1897, and, as has been said, the quitclaim deed from Williams to appellant was dated December 23, 1914, which was more than five years after appellant had entered into possession under the deed from Mrs. Wallace.

We think the testimony supports the finding that Hastey's contract was to convey to J. E. Henson, and, when Henson was put in possession of this land under this contract, he became the equitable owner of the land, with the right to acquire the legal title upon the payment of the balance of the purchase money, and that, while these payments were being made, Hastey held the legal title in trust for Henson and his heirs as security for the balance of the purchase money, and no one with knowledge of these facts could acquire from Hastey any greater rights than Hastey had, that is, that of holding the legal title in trust to secure the payment of the unpaid purchase money. Upon completing the purchase money payments Mrs. Wallace acquired, in addition to

her marital rights, only the right which Hastey had, which was to enforce the payment of this balance. *Whittington* v. *Simmons,* 32 Ark. 377; *Davie* v. *Davie,* 154 Ark. 633. The marital rights of Mrs. Wallace as the widow of Henson were not taken into account by the court below, for the reason that she was dead at the time of the institution of this suit.

The decree of the court below recognized and declared the lien which appellant had acquired by his deed from Mrs. Wallace, and the master was directed to allow appellant credit for the balance of purchase money paid by Mrs. Wallace, with the interest thereon. The decree of October 28, 1924, directed that appellant be allowed credit for the value of the improvements made by him, whereas the decree of March, 1925, which vacated the prior decree, directed that appellant be allowed credit for the necessary repairs, which were defined to be ''such repairs as were necessary in order to keep the land in the condition it was when defendant obtained possession, and sufficient to render it tillable.''

We think no error was shown in the vacation of the first—and the entry of the second—decree. It is recited that the second decree was rendered *nunc pro tunc* to conform to the decree actually rendered by the court. There is no showing upon what testimony this order was made, but it is recited that the second decree was entered to conform to the decree which was actually rendered. Moreover, the question of rents and profits had been expressly reserved until the title was adjudicated. The master had made no report on the question, and the subject remained within the jurisdiction of the court to adjudicate, and the court would have had the right, if it saw proper so to do, to change the basis upon which the account should be stated before approving the master's report, had one been filed, which had not been done.

The second decree—and not the first one—declared the correct rule for charging the value of the improvements. Appellant entered upon the land while appellee was a minor—a small child—and he did not therefore

have the right to be credited with the cost of all the improvements made by him. In the case of *Gatlin* v. *Lafon,* 95 Ark. 256, Mr. Justice BATTLE quoted from the case of *Sparkman* v. *Roberts,* 61 Ark. 27, the following statement of the law: "As to improvements and repairs, this court said in *Sparkman* v. *Roberts,* 61 Ark. 27, 32: 'Minors are not liable for permanent and valuable improvements placed on their homestead. They cannot be improved out of their homesteads; nor can the occupants be lawfully charged an increased rent on account of their improvements. In the absence of a contract, the occupant should be allowed a reasonable compensation for necessary repairs, and charged with such rents for the premises as they would have yielded without the improvements. *McCloy* v. *Arnett,* 47 Ark. 456; *Reynolds* v. *Reynolds,* 55 Ark. 369.' "

The direction of the second decree conformed to the law as thus declared, and was correct.

We find no error in the decree, and it will therefore be affirmed.